**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**HARRY FRANK JAVINS, JR.,**
**and ELAINE J. JAVINS,**

   **Plaintiffs,**

  **vs.**

**WESTFIELD INSURANCE COMPANY,**

   **Defendant.**

**CASE NO. 2:20-CV-00698**

**O R D E R**

Pending before the Court is ***Plaintiffs' Motion to Compel Discovery Responses from Defendant Westfield Insurance Company*** (ECF No. 21). The undersigned hosted an informal telephonic conference on this matter on February 16, 2021 in an attempt to see if the parties were able to resolve the issues raised in Plaintiffs' Motion, however, it became apparent that this discovery dispute would require the Court to decide the matter. Accordingly, Defendant filed its Response (ECF No. 29) to which Plaintiffs filed their Reply (ECF No. 30); the undersigned advised the parties that a decision will be made based on the pleadings alone. Having heard the arguments of counsel during the conference and having reviewed the pleadings filed in support of same, and following an *in camera* review of the unredacted materials provided by Defendant, the Court **FINDS** as follows:

**Background**

This case involves a bad faith claim Plaintiffs (when referred to separately, hereinafter "Harry Javins" and "Elaine Javins") filed against their own insurance company seeking coverage for damages incurred from a May 23, 2019 fire that occurred at their house located in Madison,

West Virginia. At the time of the fire, the house was insured by Defendant. Shortly after receiving notice of Plaintiffs' claim, Defendant began investigating the circumstances surrounding the fire and had determined on or about May 28, 2019 that its insured, Harry Javins, had intentionally set the fire, therefore, based on its policy terms, Defendant denied his claim. However, Defendant did pay the claim of Elaine Javins to the extent that she had an interest in the property.

The current discovery dispute concerns Plaintiffs' written discovery requests for documents in Defendant's claim file. Defendant has withheld certain documents or provided redacted documents on the basis of the attorney-client privilege and/or work product doctrine endorsed in this Court's holding in <u>Chambers v. Allstate Ins. Co.</u>, 206 F.R.D. 579 (S.D.W. Va. April 29, 2002) (Vandervort, M.J.).

**Plaintiffs' Argument in Support of Motion to Compel**

Plaintiffs contend that Defendant has withheld certain materials in its claim file that they need in order to litigate this case. Plaintiffs dispute Defendant's position that it can withhold materials on the basis of attorney-client privilege and/or work product doctrine because Defendant anticipated litigation from these Plaintiffs as early as May 28, 2019, when it determined Harry Javins intentionally started the fire. Plaintiffs argue that Defendant, along with its counsel, were only *investigating* Plaintiffs' claim, which is in the usual course of its business as an insurance company. Plaintiffs point to letters they received from Defendant dated May 29, 2019 (ECF No. 21-9), June 26, 2019 (ECF No. 21-10), July 12, 2019 (ECF No. 21-11) that indicate Defendant was still investigating Plaintiffs' claim. Plaintiffs argue that it was not until at the very least, by its letters dated December 23, 2019, would Defendant have had any real likelihood of litigation from Plaintiffs: when Defendant advised it would deny Harry Javins' claim, but that Defendant would pay Elaine Javins' claim. It was not until after Defendant denied Harry Javins' claim did Plaintiffs

hire counsel. In any event, Defendant could not anticipate litigation from Elaine Javins, as it did not deny her claim, and it sent her a letter dated March 24, 2020 requesting her to identify her personal property lost in the fire.

Plaintiffs do not seek any documents relating to legal analysis or opinions provided by Defendant's counsel, but does seek all other investigative documents, including material related to investigative tasks and information gathering. Plaintiffs contend that Defendant's legal counsel was acting in an investigative capacity prior to this civil action being instituted, thus any documents related to that investigative function are discoverable.

At minimum, Plaintiffs ask this Court to compel the production of all documents withheld by Defendant during the seven-month period (from the date of the fire, May 23, 2019 to the date of the denial of claim, December 23, 2019) that does not contain legal opinions or analyses; to the extent any of the investigative documents are privileged, Plaintiffs request this Court compel the production of the identity of persons involved in such communications and the nature of the documents exchanged. Plaintiffs assert they have a substantial need for this information because they cannot obtain it from any other source. Specifically, Plaintiffs seek the production of the fire cause and origin report of Defendant's fire investigator consultant – Plaintiffs point out it is very unfair that Defendant has withheld this information when it intends to rely upon same at trial to meet its burden of showing Harry Javins was responsible for the fire.

**Defendant's Argument Against Disclosure of Claim File Documents**

Defendant details the evidence it had obtained very early on in its investigation into the cause of the fire at Plaintiffs' house. Defendant asserts that as early as May 28, 2019, it became apparent that it would deny coverage and become involved in litigation with Plaintiffs. By May

3

28, 2019, Defendant characterizes its activities were not in the ordinary course of business as a claim investigation, but was in fact a fraud investigation involving arson by its own insured.

Defendant also disagrees with Plaintiffs' contention that they have a substantial need for the withheld materials in its claim file in order to prove bad faith, as other courts have found that while obtaining such information may be difficult due to being protected by attorney-client privilege and/or work product doctrine, Plaintiffs may depose Defendant's adjusters and claims representatives.

Defendant further argues that Plaintiffs' characterization of its counsel acting in an investigative role fails to appreciate the applicable law on the attorney-client privilege and work product doctrine: Defendant's communications with its counsel is protected to same extent as its own employees' notes regarding those communications. Defendant points out that it produced a copy of its claim diary with those portions pertaining to employee conversations with counsel or Defendant's litigation strategy redacted. Defendant provided an appropriate privilege log to Plaintiffs as well that described what materials were being withheld on those asserted privileges. In this case, there is no dispute that Defendant enjoys an attorney-client relationship with its counsel at Kesner & Kesner, who are attorneys of record herein; Defendant retained Kesner & Kesner after Defendant obtained information indicating Harry Javins intentionally set the fire. Thus, all actions and communications are privileged.

Defendant argues that Plaintiffs are not entitled to the origin and cause fire report of EFI Global because that firm was retained after Defendant reasonably anticipated litigation. Defendant points out that Rule 26(b)(4)(A) of the Federal Rules of Civil Procedure does not permit a party to depose another party's trial expert until after the report is provided, and further, Rule 26(b)(4)(D) does not permit the deposition of an expert who has been retained in anticipation of litigation or to

prepare for trial who is not expected to be called as a witness at trial. Until Defendant discloses that an EFI Global representative as a testifying expert per this Court's Scheduling Order, Plaintiffs are not permitted to discover any opinions EFI Global provided to Defendant or its counsel; this issue is not ripe at this time.

Regardless of Defendant's paying Elaine Javins' claim, the fact remains that she and Harry Javins are both Plaintiffs in this action, represented by counsel, and asserting the same claims, thus both would benefit from the sought discovery should this Court compel its production. It is irrelevant whether the materials were prepared in anticipation from litigation from either Plaintiff separately, or both collectively, as the Fourth Circuit has recognized that work product protection applies to all such materials. Further, despite Plaintiffs' insistence that Defendant did not submit a reservation of rights letter to either Plaintiff, this is not the basis for when the protection afforded by the work product doctrine applies.

**Plaintiffs' Reply**

Plaintiffs argue that Defendant's handling of their fire claim, regardless of whether it suspected arson at some point, *is* in its ordinary course of business. It followed its own policies and procedures to investigate the fire loss claim, thus all the documents and reports related to the investigation of Plaintiffs' claim prior to reaching its final decision to deny Harry Javins' claim, cannot be "in anticipation of litigation." Plaintiffs also argue that merely deposing Defendant's claims representatives violates the best evidence rule, as Plaintiffs would be unable to effectively and thoroughly cross-examining Defendant's witnesses as to how they handled Plaintiffs' claims. Plaintiffs assert that the majority of courts have found that the claim file is the only available source to determine the basis on which an insurer made its decision concerning a claim, is relevant to a bad faith claim, and therefore discoverable. Because Defendant has denied payment for Harry

Javins' claim due to its suspicion that he committed arson, Defendant has the burden to prove that the exclusions upon which it has relied to deny the claim apply. The claim file is the best evidence Plaintiffs can use to determine how their claims were actually handled.

Plaintiffs reassert their position that the Kesner firm's role prior to the issuance of the December 23, 2019 denial letter was investigative and/or claims adjusting. Until the denial letter was sent, Defendant did not have a reasonable anticipation of litigation. Further, Elaine Javins was paid her claim, thus Defendant certainly could not have reasonably anticipated litigation from her.

**Relevant Law**

Pursuant to Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure, a court is required, on motion or on its own, to limit the frequency and extent of discovery, when:

(1) the discovery sought is unreasonably cumulative or duplicative;

(2) the discovery can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(3) the party seeking the discovery has already had ample opportunity to collect the requested information by discovery in the action; or

(4) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Thus, "[r]elevance is . . . the foundation for any request for production, regardless of the individual to whom a request is made." Cook v. Howard, 484 Fed.Appx. 802, 812 (4th Cir. 2012). This Rule "cautions that all permissible discovery must be measured against the yardstick

of proportionality." <u>Lynn v. Monarch Recovery Management, Inc.</u>, 285 F.R.D. 350, 355 (D. Md. 2012) (quoting <u>Victor Stanley, Inc. v. Creative Pipe, Inc.</u>, 269 F.R.D. 497, 523 (D. Md. 2010)). "[I]t remains true that 'relevancy in discovery is broader than relevancy for purposes of admissibility at trial.' " <u>In re: American Medical Systems, Inc. Pelvic Repair Systems Product Liability Litigation</u>, Nos. 2:14-cv-11870, 2:14-cv-28142, 2016 WL 4411506, at *2 (S.D. W.Va. Aug. 17, 2016) (Eifert, M.J.) (quoting <u>Amick v. Ohio Power Co.</u>, No. 2:13-cv-6593, 2013 WL 6670238, at *1 (S.D. W.Va. Dec. 18, 2013)).

Pursuant to Rule 501 of the Federal Rules of Evidence, in civil proceedings state law governs privilege regarding a claim or defense for which state law supplies the rule of decision. Therefore, West Virginia law applies in determining the scope of the attorney-client privilege; communications are protected under this privilege only when:

> (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be intended to be confidential.

<u>See</u>, <u>State v. Burton</u>, 163 W. Va. 40, 254 S.E.2d 129 (W. Va. 1979).

The Fourth Circuit has adopted the "classic test" for determining the existence of attorney-client privilege:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

<u>United States v. Jones</u>, 696 F.2d 1069, 1072 (4th Cir. 1982) (quoting <u>United States v. United Shoe Machinery Corp.</u>, 89 F.Supp. 357, 358–59 (D.Mass.1950)). "The burden is on the proponent of

the attorney-client privilege to demonstrate its applicability."[1] <u>Jones</u>, 696 F.2d at 1072.

The work product doctrine is governed under Rule 26(b)(3) of the Federal Rules of Civil Procedure. This Rule does not protect documents from discovery unless they are prepared in anticipation of litigation or reveal the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

In <u>State ex rel. USF & G v. Canady</u>, 194 W.Va. 431, 460 S.E.2d 677, 684–85 (1995), the Supreme Court of Appeals of West Virginia noted that "[a]s the attorney-client privilege and the work product exception may result in the exclusion of evidence which is otherwise relevant and material and are antagonistic to the notion of the fullest disclosure of the facts, courts are obligated to strictly limit the privilege and exception to the purpose for which they exist." <u>Id</u>. at 684. However, "[c]ourts must work to apply the privilege in ways that are predictable and certain" keeping in mind that "[t]he privilege forbidding the discovery of evidence relating to communications between an attorney and a client is intended to ensure that a client remains free from apprehension that consultations with a legal advisor will be disclosed." <u>Id</u>. at 684 (citations omitted).

To determine whether a document was prepared in anticipation of litigation, "the primary motivating purpose behind the creation of the document must have been to assist in pending or probable future litigation." <u>State ex rel. United Hospital Center, Inc. v. Bedell</u>, 199 W.Va. 316, 484 S.E.2d 199, 213 (1997). Consistent with the findings of the United States Court of Appeals for the Fourth Circuit in <u>In re Grand Jury Proceedings</u>, 33 F.3d 342, 348 (4th Cir. 1994), <u>USF & G</u> held that the work product protection is analyzed in two contexts: fact work product and opinion work product:

---

[1] See also, <u>State ex rel. USF & G v. Canady</u>, 194 W. Va. 431, 460 S.E.2d 677, 684 (1995) (the claimant bears the burden of establishing the applicability of the attorney-client privilege or the work product exception).

> Both are generally protected and can be discovered only in limited circumstances. Fact work product can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship .... Opinion work product is even more scrupulously protected as it represents the actual thoughts and impressions of the attorney, and the protection can be claimed by the client or the attorney.

USF & G, 460 S.E.2d at 691 (quoting In re Grand Jury Proceedings, 33 F.3d at 348).

In State ex rel. Allstate Ins. Co. v. Gaughan, 203 W.Va. 358, 508 S.E.2d 75, 92 (W.Va. 1998), the West Virginia Supreme Court of Appeals provided guidance in analyzing work product issues, and determined that a case-by-case approach is

> more sound in determining whether documents in an insurance claim file were prepared in anticipation of litigation. The trial court should consider the nature of the requested documents, the reason the documents were prepared, the relationship between the preparer of the document and the party seeking its protection from discovery, the relationship between the litigating parties, and any other facts relevant to the issue.

(quoting Askew v. Hardman, 918 P.2d 469, 473–74 (Utah 1996)).

Finally, Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure provides that if a motion to compel is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving the parties an opportunity to be heard, require the party whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees. However, the court must not order this payment should the opposing party's nondisclosure, response, or objection was substantially justified, or other circumstances make an award of expenses unjust. See Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).

### Discussion

As an initial matter, the undersigned notes that in addition to filing its Answer to Plaintiffs' claims of breach of contract, bad faith, and unfair claims settlement practices (ECF No. 1-1),

Defendant also filed a Counterclaim for Declaratory and Other Relief, expressly alleging that Harry Javins breached the insurance contract in bad faith by intentionally causing the fire that damaged Plaintiffs' house, and that Harry Javins made material misrepresentations of facts relating to the fire loss (ECF No. 4 at 16-18); Plaintiffs timely filed an Answer to this Counterclaim (ECF No. 5). Pursuant to the Scheduling Order entered in this civil action, the party bearing the burden of proof on an issue shall make expert disclosures no later than June 25, 2021, the party not having the burden is to make such disclosures no later than July 23, 2021, with rebuttal or contradictory disclosures due by August 6, 2021. (See ECF No. 7 at 2, ¶3)

Clearly, the subject discovery dispute centers on when and to what extent Defendant's asserted attorney-client privilege/work product doctrine protections apply with respect to the documents contained in its claim file. Even a cursory review of the privilege log indicates that Defendant leans heavily, if not exclusively, on this Court's decision in Chambers v. Allstate Ins. Co., where following an *in camera* examination of all the documents at issue, the Court found they were protected under the attorney-client privilege and/or work product doctrine. Plaintiffs, on the other hand, rely more on Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655 (S.D. Ind. 1991), which ordered the production of all reports, investigations and documents prepared prior to the insurer's issuance of the denial notice, having found that this information was generated in the ordinary course of business, and therefore not protected under work product.

There is no dispute that Plaintiffs' house was insured by Defendant, covered by a policy with effective dates of May 29, 2018 through May 29, 2019. (See, i.e., ECF No. 4 at 2, ¶6; ECF No. 5 at 1, ¶4) There is no dispute that a fire destroyed Plaintiffs' house on May 23, 2019, however, there is a dispute as to the origin of the fire, and Plaintiffs unequivocally deny that the fire resulted from the intentional act or acts committed by Harry Javins with the intent to cause the loss (ECF

No. 5 at 2, ¶9). Other matters remain undisputed, however: that Plaintiffs received a letter from Defendant dated May 24, 2019 indicating that their claim will be handled (ECF No. 21-8); that Plaintiffs received another letter from Defendant dated May 29, 2019 requesting an inventory of the property loss (ECF No. 21-9); that Plaintiffs received another letter from Defendant dated June 26, 2019 indicating that it was completing its investigation of Plaintiffs' claim (ECF No. 21-10); that Plaintiffs received another letter from Defendant dated July 12, 2019 again informing Plaintiffs that the investigation was ongoing, and further requesting that Plaintiffs submit to Examinations Under Oath ("EUO") and that Defendant "requested that Mr. Brent Kesner of the Kesner & Kesner law firm . . . to assist us with your [EUO]" in accordance with the terms of Plaintiffs' contract with Defendant (ECF No. 21-11)[2]; that Elaine Javins received a letter from Defendant dated December 23, 2019 indicating that the fire was intentionally set, but also included a check in the amount of $130,000.00 representing her one-half interest in the Madison house (ECF No. 21-5); that Elaine Javins received a letter from Defendant dated March 24, 2020 indicating that Defendant will pay Elaine Javins to repair or replace premarital property as of the date of the loss and one half of the value of the martial property at the time of the loss, plus additional expenses as covered by the policy (ECF No. 21-6); and that Harry Javins received the

---

[2] In addition to its request that Plaintiffs submit to EUO, Defendant also requested that Plaintiffs forward numerous documents "as soon as possible as not to delay our investigation of your claim" which included: copies of Plaintiffs state and federal tax returns with all exhibits and schedules for tax years 2016, 2017, and 2018; copies of all monthly statements from January 1, 2018 through and including June 30, 2019 for all accounts at any financial institution; copies of all monthly statements for all utility sources for the subject Madison house as well as Plaintiffs' home in Cross Lanes, West Virginia from January 1, 2018 through and including June 30, 2019; copies of all monthly credit card statements from January 1, 2018 through and including June 30, 2019; a copy of Plaintiffs' lease agreement for the residence located in Cross Lanes and lease payment history from January 1, 2018 through and including June 30, 2019; copies of all cellular telephone bills, for all parties on Plaintiffs' cellular telephone plan, to include the showing of all incoming/outgoing call and text messages from January 1, 2018 through and including June 30, 2019; a list of all debts in excess of $1000 as of the date of the loss identifying the creditor, the date the debt was incurred, the original amount of the debt, the amount owed now and at the time of the loss; copies of the loan application and payment history for the mortgage of the subject Madison house from January 1, 2018 through and including June 30, 2019; copies of all estimates, appraisals, receipts or cancelled checks reflecting the cost of repairing or replacing personal property or real estate Plaintiffs claim was damaged or destroyed; and copies of all tax bills and payment history from Boone County concerning the subject Madison house for tax years 2016, 2017, 2018, and 2019.

denial letter from Defendant dated December 23, 2019 stating that Defendant had completed its investigation concerning the fire loss and determined that Harry Javins "intentionally concealed and/or misrepresented material facts or circumstances, engaged in fraudulent conduct, and/or made false statements related to [his] claim under the Policy." (ECF No. 21-7)

The aforementioned circumstances align more with those presented in Harper v. Auto-Owners Inc. Co., *supra*. For instance, that matter also concerned an insured moving to compel the production of various documents prepared by his insurer that were generated in connection to the insured's fire loss claim. Within days of the fire loss, the insurer not only employed outside experts to conduct investigations into the cause and origin of the fire, but also retained outside counsel to monitor progress of the case and to examine the insured under oath pursuant to the terms of its policy. A couple of months after the fire loss, the insurer sent a notice to the insured denying the claim. The court ultimately determined that with respect to the work product claim, the insurer failed to overcome the presumption that documents it prepared after learning of the incendiary origin of fire but prior to sending out the denial notice were not prepared in reasonable anticipation of litigation; and documents prepared by outside counsel hired to monitor the progress of the case and to conduct the examination under oath of the insured was not subject to attorney-client privilege to the extent that the attorney acted as claims adjuster, claims process supervisor, claims investigation monitor, and not as legal adviser.

However, the similarities between that case and the one at bar end at this point, because significantly, the court found that the insurer did ***no*** investigation prior to sending its denial notice, therefore, it could not claim work product protection.[3] Here, Defendant clearly did investigate into Plaintiffs' claims prior to sending its denial letters.

---

[3] It may have also been relevant to the court's decision that while the parties in that case did not dispute arson, the plaintiff was not a suspect.

Chambers is also similar to the case at bar to the extent that the fire loss occurred shortly after the insured was advised that coverage on the subject property was to terminate. (See ECF No. 29 at 2; ECF No. 29-1, Bates-stamped WIC000083) In Chambers, the insurer notified the plaintiff about a month earlier that it intended to cancel her policy, and nearly ten days prior to the intended cancellation date, the plaintiff's house was destroyed by fire. Another similarity between the parties involved in Chambers and the matter at bar are that the insurer in Chambers suspected its insured, the plaintiff, of having intentionally set fire to her house.[4] There is, however, no indication from Chambers, or from the underlying case law[5] that influenced the decision therein that the insurers involved outside counsel in their ongoing investigation into their insureds' claims to the extent performed in this case.

An additional, distinguishable feature from Chambers is that the insurer did not file a counterclaim for fraud against its own insured: thus, it is apparent that Defendant herein intends to prove that the exclusions outlined in its policy terms apply in this case, as set forth in its December 23, 2019 letters to Plaintiffs. This Court recently recognized that " '[a]n insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion.' " See Cooper v. Westfield Ins. Co., 2020 WL 5647015, at *3 (S.D.W. Va. 2020) (Johnston, J.) (quoting State ex rel. Nationwide Mut. Ins. Co. v. Wilson, 236 W.Va. 228, 778 S.E.2d 677, 685 (2015) (internal citations omitted)[6]; Rabon v.

---

[4] Unlike Harry Javins, the plaintiff in Chambers was actually indicted and convicted of arson, although the conviction was later overturned.

[5] In their respective pleadings and exhibits, the parties reference Carver v. Allstate Insurance Company, 94 F.R.D. 131 (S.D. Ga. 1982), Lett v. State Farm Fire & Casualty Company, 115 F.R.D. 501 (N.D. Ga. 1987), and Ring v. Commercial Union Insurance Company, 159 F.R.D. 653 (M.D.N.C. 1995); these cases were discussed at length in the Chambers decision.

[6] The Cooper case also involved this Defendant, and concerned an insured filing a declaratory judgment action against its insurer, Westfield; Westfield also filed a counterclaim against its own insured alleging it had no duty to defend or indemnify under its policy terms. This Court granted Westfield's motion for summary judgment, therefore it did not need to pursue its counterclaim against the plaintiff.

Great Southwest Fire Ins. Co., 818 F.2d 306 (4th Cir. 1987) ("[w]hen it asserted the affirmative defense of arson, [the insurance company] assumed the burden of proving, . . ., that the fire . . . was incendiary in origin and that . . ., the insured, caused the fire.") (internal citation omitted).

Numerous courts have recognized that "[t]he nature of the insurance business requires an investigation prior to the determination of the insured's claim", and then "at some point an insurance company shifts its activity from the ordinary course of business to anticipation of litigation, and no hard and fast rule governs when this occurs." See Front Royal Ins. Co. v. Gold Players, Inc., 187 F.R.D. 252, 256 (W.D. Va. June 7, 1999) (internal citations omitted). In other words, documents are not created in anticipation of litigation unless the probability of litigating the claim is "substantial and imminent" or litigation is "fairly foreseeable" when it is created. State Farm Fire and Cas. Co. v. Perrigan, 102 F.R.D. 235, 238–239 (W.D. Va. June 14, 1984) (internal citations omitted); see also, Lett v. State Farm Fire and Cas. Co., 115 F.R.D. 501, 503 (N.D. Ga. Feb. 20, 1987) (citing Carver v. Allstate Insurance Company, 94 F.R.D. 131, 134 (S.D. Ga. 1982) (internal citations omitted). In any event, courts generally agree that work product protection should be determined on a case-by-case basis. See Auto Owners Ins. Co., 135 F.R.D. at 202 (citing Lett v. State Farm Fire and Cas. Co., 115 F.R.D. 501, 503 (N.D. Ga. 1987) ); Air heart v. Chicago and North Western Transp. Co., 128 F.R.D. 669, 671-672 (D.S.D. 1989); Pete Rinaldi's Fast Foods v. Great Am. Ins. Cos., 123 F.R.D. 198, 202 (M.D.N.C. 1988)); Chambers v. Allstate Ins. Co., 206 F.R.D. 579, 585 (S.D.W. Va. 2002).

As an ancillary matter, although Plaintiffs assert that Defendant did not send any notice of a reservation of rights on the subject claim prior to the denial letter of December 23, 2019 as further support that it had no reasonable anticipation of litigation, the undersigned agrees with Defendant that there is no legal predicate that such a notification is dispositive as to when or to what extent

the protections afforded by attorney-client privilege and/or work product doctrine are triggered. In any event, Defendant's letter dated July 12, 2019 indicated a "reservation of rights" in the last paragraph that may be construed as such a notice.[7] (See ECF No. 21-11 at 3)

Additionally, although Plaintiffs contend that they did not retain counsel until after receipt of the December 23, 2019 denial letter(s), and that therefore, Defendant had no reasonable anticipation of litigation, again, none of the pertinent legal authorities, including the Federal Rules of Civil Procedure, explicitly provides for such a condition precedent as a triggering event for a "reasonable anticipation of litigation." Further, none of the legal authorities specifically provide that when an insured retains counsel does an insurer have a reasonable anticipation of litigation – as noted *supra*, given there is no bright-line rule, these are simply facts that all courts must consider when determining whether certain protections are afforded to withheld documents during discovery.

Courts have observed that "where an insurer claims that it acted in anticipation of litigation before it formally denied the claim, the insurer 'bears the burden of persuasion by presenting specific evidentiary proof of objective facts demonstrating a resolve to litigate.' " See Wingo Holdings, LLC, v. Northfield Insurance Company, 2006 WL 8433647, at *7 (S.D. Fla. April 27, 2006) (quoting Pete Rinaldi's Fast Foods, Inc., 123 F.R.D. at 202). The particular facts presented in the case at bar suggest that while Defendant may have had some suspicion that suggested Harry

---

[7] The language reads as follows:

> Westfield Insurance Company's investigation and analysis of the claimed loss is not intended to be, and should not be construed as, a waiver of any rights, conditions, exclusions or defenses under the policy of insurance, or an admission of liability. In that regard, please be advised that nothing done by Westfield, or anyone acting on its behalf, relating to its investigation of the loss is or should be construed, as an admission of liability on the part of Westfield Insurance Company. Westfield will continue to reserve each and every right, condition, exclusion and defense that it may have under and pursuant to the applicable policy of insurance. Westfield will continue to conduct its investigation of this matter subject to this reservation of rights.

Javins may have intentionally set the fire as of May 28, 2019, Defendant, along with the assistance of its counsel, continued to investigate the cause and origin of the fire well beyond May 28, 2019. Indeed, the letters dated May 29, 2019 and June 26, 2019 clearly state that Defendant was engaged in further investigation into Plaintiffs' claims; however, the particular circumstances in this case indicate that Defendant still had not decided to deny Plaintiffs' claims until it issued the December 23, 2019 letters.

Although Defendant contends that EFI Global's "Fire Origin & Cause Report" is protected under the work product doctrine, it is apparent that under the circumstances at the time, this document was prepared in furtherance of Defendant's investigation into whether it would accept or deny Plaintiff's claim.[8] The undersigned notes that the EFI representative obtained an executed consent form from Harry Javins in order to enter the property site in order to do the scene inspection.[9] From the materials provided to the undersigned for *in camera* review, it is noted that the "Fire Origin & Cause Report" is dated June 25, 2019 and was prepared for "Westfield Group" – there in no indication in this report that anyone with the Kesner law firm was involved, although it does state that EFI was referred by "Ms. Karla Farrell of Stutman Law" to conduct the investigation. Incidentally, Harry Javins' consent form also contained a signed acknowledgement that "Stutman Law" had his permission to take evidence from the scene to determine the cause of the loss as well as his consent to dispose of same. Clearly, from Harry Javins' perspective, and objectively speaking, Defendant was acting as a typical insurer investigating its insured's loss due to fire as part of its "ordinary course of business."

---

[8] Further, given that Defendant has filed a counterclaim against Plaintiffs seeking declaratory judgement for denying their fire loss claims, it would appear that pursuant to the Scheduling Order, *supra*, that Defendant would disclose this document to Plaintiffs by June 25, 2021.

[9] The documentation provided to the undesigned indicates that Harry Javins executed the consent form on May 30, 2019; this document is Bates-stamped WIC002379.

16

Nevertheless, some significant and striking observations in the EFI Global report is that it *did not* unequivocally determine that the cause of the fire was arson; it *did not* determine that the cause of the fire was *intentional*; and most importantly, it *did not* identify Harry Javins as having set the fire, whether accidentally or *intentionally*. Bizarrely, Defendant's December 23, 2019 letters to Plaintiffs state that "The origin and cause investigation performed at the Subject Property has disclosed that the fire originated in the basement, and *was the result of an incendiary act*. That is, the fire at the Subject Property was *intentionally set*." (*emphasis* added) This strikes the undersigned as disingenuous, at minimum.[10] In fact, outside of Defendant's own opinion, there has been no evidence presented to the undersigned, whether in camera or not, that suggests that Plaintiffs' house fire was the result of arson, let alone that Harry Javins committed arson.

The undersigned exhaustively examined the materials provided for *in camera* review. Defendant asserts that it determined as early as May 28, 2019 that its insured, Harry Javins, intentionally started the fire and was guilty of arson. However, the undersigned was unable to locate any notes in the claims file submitted for *in camera* review where there was any indication on May 28, 2019 that a determination was made that the fire was intentional or that Defendant concluded that its insured, Harry Javins, was the one who set it. In fact, a close reading of the claims file shows otherwise. Specifically, the undersigned calls attention to the following:

1.  An entry by Alvin Schuck on 06/03/2019 at 8:01 AM states: "On Saturday evening 060119 spoke with our O&C expert Greg Bailey. He has completed scene exam…. Baileys (*sic*) opinion is the fire was intentionally set." (WIC000048)

---

[10] This appears to go to the heart of Plaintiffs' bad faith claim, and the sole purpose endorsed by these Plaintiffs in obtaining these withheld materials from Defendant's claim file – to answer why and how Defendant decided to deny their claims. Whether this can be construed as bad faith is irrelevant to the issues raised herein, but a query to be resolved by the trier of fact. However, after reviewing the entire claims file, the undersigned is hard pressed in reconciling the claims made by Defendant in its denial letter with the findings made by EFI Global.

2. An entry by Douglas Goewey on 06/24/2019 at 2:49 PM states: "Received call from insured and Harry was upset because of questions SIU asked him and his wife…. He asked when he would know something and I said as soon as **I finished my investigation**." (WIC000038) (emphasis added).

3. An entry by Douglas Hall on 07/01/2019 at 2:39 PM stated: "Investigator Schuck has compiled in draft form a request for information regarding the subject claim matter. Mr. Schuck has compiled the investigation request pursuant to Westfield's **ongoing investigation** of the Javins' claimed loss…" (WIC000035) (emphasis added).

4. An entry by Douglas Goewey on 08/22/2019 at 10:34 AM stated: "Participated on a conference call and **discussed the claim** with Brent, Bruce and Todd." (WIC000030) (emphasis added).

5. An entry by Todd Boose on 09/13/2019 at 3:58 PM stated: "File Review Reviewed file at diary WV Fire Loss **Our investigation continues**…" (WIC000028-000029) (emphasis added).

6. An entry by Steve Brown on 09/17/2019 at 12:02 PM stated: "…**Claim is under investigation** to date and EUO performed of the named insureds on 08/11/19." (WIC000028) (emphasis added).

7. An entry by Todd Boose on 10/07/2019 at 4:32 PM stated: "Counsel Kesner advising that he is working on a follow up letter to the insured regarding the information and if nothing received in response to this letter then he will be sending final letter advising insured that **we will have to proceed with our coverage assessment** without the information if the insured has not provided. (WIC000027) (emphasis added).

8. An entry by Alvin Schuck on 10/15/2019 at 10:27 AM stated: "He ask (*sic*) about coverage for his expenses traveling back and forth to work and I advised **no coverage decisions have been made and the claim remains under investigation**." (WIC000027) (emphasis added)

9. An entry by Steven Brown on 10/22/2019 at 09:57 AM stated: "Reviewed on activity. **The investigation of the matter is still ongoing in all respects.**" (WIC000027) (emphasis added)

10. An entry by Steven Brown on 11/04/2019 at 03:05 PM stated: "Further attorney Kenser requests if the insureds are unwilling to provide the materials to notify **so Westfield can move forward with the coverage analysis.**" (WIC000026) (emphasis added)

11. An entry by Todd Boose on 12/23/2019 at 12:13 PM: "**Our investigation in to** (*sic*) **the facts and circumstances of this claimed loss has come to conclusion**…. The subject fire was determined to be an incendiary fire which was intentionally set. (WIC000025) (emphasis added)

12. An entry by Alvin Schuck on 12/27/2019 at 7:39 AM stated: "**A coverage decision has been made** and no further SIU involvement is necessary." (WIC000024) (emphasis added).

Synthesizing the above entries leads any reasonable person to conclude that Defendant's conclusions regarding the subject claim was made on or around the date of December 23, 2019. There is absolutely no indication in the claims file at all that logically leads anyone to conclude that "it became apparent" to Defendant that it would deny coverage to Harry Javins and grant coverage to Elaine Javins.  In fact, Defendant's origin and cause expert, Greg Bailey, did not visit the property and conduct his investigation until early June of 2019. How then could Defendant

have determined that the cause of the fire was arson and that its insured caused the fire on May 28, 2019? The logical answer is that Defendant could not, and did not, make that determination on that date. It appears to the undersigned that Defendant uses the date of May 28, 2019 in an attempt to push the date of "determination" as far back in time as possible in an attempt to shield as much of its claims file as possible to argue that litigation was expected at that time. However, as the multiple entries by multiple Westfield representatives indicate, the claim investigation was ongoing and under investigation until a final determination was made on December 23, 2019. While the June 3, 2019 entry indicates that Defendant's expert's "opinion" was that the fire was intentionally set, there is no conclusions made at that time nor was there any allegation at that time that Harry Javins was suspected of setting the fire.[11]

Moreover, it appears to the undersigned that *even after* Plaintiff's August 12, 2019 EUOs or depositions, Defendant and its counsel were not only discussing the legal ramifications of Plaintiffs' claims, but also were ***still conducting an investigation of the coverage issues*** while waiting on Plaintiffs to supplement their document requests. Further, Plaintiffs were ***still in some form of contact with Defendant and/or its counsel*** through November 2019 and attempting to supplement Defendant's document requests in order to assist Defendant in adjusting their claims. As with the scene inspection by EFI Global, from Plaintiffs' perspective, and objectively speaking, Defendant was ***still acting as an insurer investigating Plaintiffs' fire loss claim***. Of further interest here is that *even after* Defendant sent Plaintiffs' the December 23, 2019 letters, on December 27, 2019, Plaintiffs' insurance agent, Chris D. Parker of Farrell & Hill Insurance

---

[11] It should be noted that the claims file notes never indicate that Westfield concluded that Harry Javins intentionally started the fire in question.  In fact, the only time that the undersigned could find that Westfield explicitly or implicitly implicated Harry Javins was in the text of the denial of coverage letter. If, in fact, Westfield and its representatives believed that Harry Javins was suspected of starting the fire, then why would it not be mentioned in the claims history?

Agency of Madison, West Virginia, emailed Steven A. Brown[12], Regional Property Specialist of Defendant, Westfield Group stating: "I saw that payment was made for this customers home loss. Does that mean Westfield is not going to deny coverage? Seemed like it was trending that way previously but didn't know what the final decision was." (this email is Bates-stamped WIC001255) Though it appears that this email was later forwarded to Defendant's counsel, clearly, this is a communication between two insurance agents, and Mr. Parker was not seeking legal advice, only inquiring into what the final decision was regarding a claim for loss. In short, this communication does not enjoy the protections afforded by either the attorney-client privilege or work product doctrine.

In any event, it is clear from the pertinent case law, and in consideration of the specific facts presented in the case at bar, Defendant had not made an official determination to deny Plaintiffs' claims until on or about December 23, 2019 – not until well after Defendant had engaged in months of investigation into Plaintiffs' claims. This is an important distinction in this case versus the Chambers case and its predecessors: in those cases, the insurers relied on strong circumstantial evidence that determined their insureds' claims were not covered because their insureds not only *caused* their losses, but also *intentionally* caused their losses. From the date of the loss, May 23, 2019, through the date of denial, December 23, 2019 (with the notable exception being the December 27, 2019 email from Mr. Parker to Mr. Brown, *supra*), the particular facts in this case demonstrate that Defendant had no reasonable anticipation of litigation from Plaintiffs because not only did Defendant not know that Harry Javins intentionally set the fire to his house, but also, Defendant was still investigating whether Harry Javins intentionally set the fire to establish a reason to deny his claim. Indeed, outside of Defendant's own *opinion*, there has been no evidence

---

[12] Interestingly, Mr. Brown was the author, or at least the signatory, to the December 23, 2019 denial letters to Plaintiffs.

presented to the undersigned, *in camera* or otherwise, that implicates Harry Javins as an arsonist, or suspected of arson, or even that he intentionally set the fire.[13]

As an additional matter, it is apparent that Defendant's counsel, Mr. Kesner and his law firm, wore two hats: he and his law firm acted in the role as investigator and claims adjuster/administrator, but also as legal advisor. Because of this dual role, there are some communications the undersigned observed in the materials provided for *in camera* review that would be protected under attorney-client privilege; however, with regard to those materials, more specifically identified *infra*, which were produced in furtherance of Mr. Kesner's/Defendant's investigation into Plaintiffs' fire loss claims, those enjoy no such protection, or even under the work product doctrine.[14]

Accordingly, it is hereby **ORDERED** that ***Plaintiffs' Motion to Compel Discovery Responses from Defendant Westfield Insurance Company*** (ECF No. 21) is **GRANTED** to the extent that seeks production of all materials predating December 23, 2019 that do not concern attorney-client communications or work product, more specifically identified from the following source files as provided to the undersigned for *in camera* review:

Claim File #1 – Bates-stamped documents WIC000025-53, -83

Claim File #2 – Bates-stamped documents WIC000054-82

Claim File #3 – Bates-stamped documents WIC000207, WIC000221, WIC000402, WIC000470-472

Claim File #4 – Bates-stamped documents WIC000968-996

---

[13] As noted in Plaintiffs' Answer to Defendant's counterclaim, even the West Virginia State Fire Marshal could not determine the origin of the fire. (See ECF No. 5 at 2, ¶9)

[14] This is akin to the situation explored in Canady, *supra*, where investigations into insurance claims by individuals holding law licenses does not automatically trigger the attorney-client privilege protection governing the documents generated during those investigations. See Canady, 194 W.Va. at 444, 460 S.E.2d at 690 (holding that adopting such a rule would shield from discovery documents that would otherwise not be entitled to any protection if written by an employee who holds no law license but who performs the same investigation and duties).

Claim File #5 – Bates-stamped documents WIC001106-1118

Claim File #6 – Bates-stamped documents WIC001130-1158

Claim File #8 – Bates-stamped documents WIC001162-1190

Claim File #9 – Bates-stamped documents WIC001255, WIC001330

Claim File #10 – Bates-stamped documents WIC001351-1380 (entire file)

Claim File #11 – Bates-stamped documents WIC001394-1397

Claim File #12 – Bates-stamped documents WIC001398-1448

Claim File #13 – (entire file)[15]

Claim File #14 – Bates-stamped documents WIC002333-2379 (entire file)

Claim Files #15, #16, #17, #18, #19 – only the photographs from these files[16]

### Rule 37 Implications

Defendant's insistence that nearly its entire claim file concerning Plaintiffs' fire loss claims is protected under attorney-client privilege and/or work product doctrine not only waters down these important privileges, but also violates the basic notions of civility and fair play, which unfortunately, caused Plaintiffs to have to file a motion to compel. Furthermore, because of the Defendant's unreasonable assertions that Westfield concluded that Harry Javins was guilty of arson as early as May 28, 2019, the Court had to use valuable judicial time and resources to review documents that clearly should have been produced without the need of court intervention. Such conduct must be discouraged in order to avoid the waste of valuable and limited judicial resources.

Therefore, pursuant to Rule 37, Plaintiffs are invited to file the appropriate motion for their reasonable attorneys' fees and expenses incurred in making the motion, while outlining the reasons

---

[15] The documents contained in this claim file are Bates-stamped, though primarily not in a regular, numerical sequence and are far too numerous to list each one.
[16] Because these documents are photographs, it was difficult to determine the exact Bates-stamp numbers, but they are presumed to be WIC002384-2876 given the volume of the photographic materials.

why an award for expenses is appropriate in this matter, including the time it took prosecute the motion. Defendant shall be allowed to file an appropriate pleading setting forth why this Court should not award Plaintiffs expenses and attorneys' fees, and any other objections to the accounting of time filed by Plaintiffs.

In accordance with Rule 72(a) of the Federal Rules of Civil Procedure, the ruling set forth above on this non-dispositive motion may be contested by filing, within 14 days, objections to this Order with District Judge Berger; accordingly, Defendant's obligation to disclose the materials discussed herein are hereby **STAYED**, pending the filing of any objections. If objections are filed, the District Court will consider the objections and modify or set aside any portion of the Order found clearly to be erroneous or contrary to law. If objections are not filed, the Defendant's obligation to disclose the materials discussed herein shall be made no later than April 5, 2021.

The Clerk is requested to send a copy of this Order to all counsel of record.

**ENTER: March 19, 2021**.



Omar J. Aboulhosn
United States Magistrate Judge