IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHARLESTON DIVISION**

HARRY FRANK JAVINS, JR.
and ELAINE J. JAVINS,

             Plaintiffs,

v.                                                                                     CIVIL ACTION NO.   2:20-cv-00698

WESTFIELD INSURANCE COMPANY,

             Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Westfield Insurance Company's Objections to March 19, 2021 Order Granting Plaintiffs' Motion to Compel Discovery Responses* (Document 35), *Plaintiffs' Response to Westfield Insurance Company's Objections to March 19, 2021 Order Granting Plaintiffs' Motion to Compel Discovery Responses* (Document 40), *Westfield Insurance Company's Reply to Plaintiffs' Response to Westfield's Objections to March 19, 2021 Order Granting Plaintiffs' Motion to Compel Discovery Responses* (Document 41), the Magistrate Judge's *Order* (Document 32), and all attendant documentation.  For the reasons stated herein, the Court finds that the objections to the Magistrate Judge's Order should be sustained.

**PROCEDURAL AND FACTUAL BACKGROUND**

The complaint in this matter was filed on September 15, 2020, in the Circuit Court of Boone County, West Virginia.  On October 21, 2020, the matter was removed to this court.  The complaint sets forth claims for breach of contract, bad faith, and unfair claims settlement practices

against Plaintiffs Harry and Elaine Javins' insurance company.   Their claims arise from a denial of insurance coverage for a fire that occurred on May 23, 2019, at their house in Madison, West Virginia.   The Defendant denied coverage after investigating the circumstances and determining that Mr. Javins intentionally set fire to the house.   The Defendant did, however, pay Ms. Javins to the extent that she had an interest in the property.

By *Administrative Order* entered October 22, 2020, the action was referred to the Honorable Omar J. Aboulhosn, United States Magistrate Judge, to preside over pretrial matters, including discovery, pursuant to 28 U.S.C. § 636.   The current discovery dispute centers around documents that the Defendant has withheld or redacted, claiming that they are protected by attorney-client privilege and/or the work product doctrine.   The Plaintiffs filed a motion to compel discovery of documents created from May 23, 2019, the date of the fire, to December 23, 2019, the date the Plaintiffs received a letter from the Defendant denying their claim for coverage.   On March 19, 2021, the Magistrate Judge entered an *Order* granting the Plaintiffs' motion to compel discovery responses from Defendant Westfield Insurance Company.

On April 2, 2021, the Defendant submitted objections to the Magistrate Judge's order granting the Plaintiffs' motion to compel.   On April 16, 2021, the Plaintiffs filed a response in opposition to the objections.   The Defendant filed its reply on April 23, 2021.   The objections are now ripe for consideration.

## STANDARD OF REVIEW

A party may file objections to a magistrate judge's order on any nondispositive pretrial matters within fourteen days.   Fed. R. Civ. P. 72(a).   The district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to

law." *Id.* Factual findings are reviewed under the clearly erroneous standard; however, legal conclusions may be rejected if they are contrary to law. *Boyes v. Pickenpaugh*, 2:18-cv-01247, 2020 WL 4740486, at *2 (S.D. W. Va., Aug. 14, 2020) (quoting *Neighborhood Dev. Collaborative v. Murphy*, 233 F.R.D. 436, 438 (D. Md. 2005)) (J., Johnston).

Under the clearly erroneous standard, the magistrate judge's factual findings should be affirmed "unless the court is left with a 'definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. Wooden*, 693 F.3d 440, 451 (4th Cir. 2012)). "When a magistrate judge's order turns on a pure issue of law, the district court's review is 'plenary' and ultimately Rule 72(a)'s 'contrary to law' standard is effectively the same as *de novo* review." *Blankenship v. Brooks Run Mining Company, LLC*, 2:14-cv-26268, 2017 WL 1319825, at *1 (S.D. W. Va. Apr. 5, 2017) (quoting *Felman Prod., Inc. v. Indus. Risk Insurers*, No. 3:09-0481, 2010 WL 2944777, at *3 (S.D. W. Va. July 23, 2010)) (J., Johnston).

## DISCUSSION

The Defendant argues that the Magistrate Judge's order is erroneous and contrary to law. In particular, the Defendant argues that the Magistrate Judge's finding that the Defendant did not anticipate litigation until it formally denied Mr. Javins' claim ignored the fact that the Defendant had information suggesting Mr. Javins had intentionally set the fire long before it formally denied his claim. The Defendant further argues that the case law is clear that work product protection applies as soon as an insurer reasonably suspects arson is involved and that communications with its retained counsel should be protected under the attorney-client privilege. Moreover, the Defendant claims that the origin and cause report of EFI Global should not be disclosed because the opinions of consulting experts are not subject to discovery. The Defendant pushes back on

3

the Magistrate Judge's conclusion that the Defendant's assertions of privilege were disingenuous or violative of basic notions of civility and fair play.

The Plaintiffs argue that the Defendant's objections should be overruled, and the Magistrate Judge's order should be upheld.   Specifically, the Plaintiffs argue the Defendant could only have reasonably anticipated litigation upon its formal decision to deny the claim.   The Plaintiffs assert that the Magistrate Judge correctly followed applicable case law in determining at what point work product protection applied in this case.   Lastly, the Plaintiffs argue that Kesner & Kesner law firm was retained in an investigatory capacity, rather than as counsel, so the attorney-client privilege does not apply.

*A.  Work Product Doctrine*

The Federal Rules of Civil Procedure protect documents that are prepared in anticipation of litigation or that reveal the mental impressions, thoughts, and conclusions of certain representatives evaluating legal claims.  *Chambers v. Allstate Ins. Co.*, 206 F.R.D. 579, 584 (S. D. W. Va. 2002).   To obtain discovery of documents prepared "in anticipation of litigation" the party seeking discovery must demonstrate that it "has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."  Fed. R. Civ. P. 26(b)(3).   The party asserting the work product doctrine has the burden of proving it applies, then the burden shifts to the "contesting party to prove substantial need for and inability to obtain the substantial equivalent of the materials by any other means."  *Chambers*, 206 F.R.D. at 584.

"[I]n resolving the question of whether matters are immune from discovery because of a work product rule, attention must be turned first to whether the documents or tangible things were

prepared in anticipation of litigation or for trial and then, for materials other than legal opinion or theory, to whether the requesting party has demonstrated a substantial need." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992). "The threshold question, then, is whether the requested documents were produced 'in anticipation of litigation.'" *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 659 (S.D. Ind. 1991). To determine whether a document was prepared in anticipation of litigation, the inquiry focuses on whether the document was prepared in the ordinary course of business or whether it was prepared because of the prospect of litigation. *Carver v. Allstate Ins. Co.*, 94 F.R.D. 131, 134 (S.D. Ga. 1982) (quoting 8 Wright & Miller, Federal Practice and Procedure: Civil s 2024 (1970)) (internal parentheses omitted). Thus, courts must proceed on a "case-by-case" basis in considering whether documents were prepared for litigation, and courts may also consider the nature and purposes of the documents through *in camera* examination. *Chambers*, 206 F.R.D. at 585.

Work product determinations are particularly difficult in litigation over insurance coverage decisions because "[w]hile it is in the ordinary course of their business to investigate reported losses, as they reach decisions to deny coverage, insurers may reasonably anticipate that they will be sued over them." *Chambers v. Allstate Ins. Co.*, 206 F.R.D. 579, 584 (S.D. W. Va. 2002). Courts have recognized that "[t]he nature of the insurance business requires an investigation prior to the determination of the insured's claim[,]" and then "at some point an insurance company shifts its activity from the ordinary course of business to anticipation of litigation, and no hard and fast rule governs when this occurs." *Front Royal Ins. Co. v. Gold Players, Inc.*, 187 F.R.D. 252, 256 (W.D. Va. June 7, 1999) (quoting *State Farm Fire and Casualty Co. v. Perrigan*, 102 F.R.D. 235, 237-38 (W.D. Va. 1984)).

There are two divergent bodies of case law governing the application of the work product doctrine to documents prepared by insurers in investigating claims of fire loss thought to be caused by arson.  One line of cases holds that litigation becomes reasonably anticipated—and, thus, documents are covered by the work product doctrine—when the insurer has an indication that the loss was caused by the insured committing arson.  *See Chambers*, 206 F.R.D. 579 (S.D. W. Va. 2002); *Carver v. Allstate Ins. Co.*, 94 F.R.D. 131 (S.D. Ga. 1982); *Lett v. State Farm Fire & Casualty Co.*, 115 F.R.D. 501 (N.D. Ga. 1987); *Ring v. Commercial Union Ins. Co.*, 159 F.R.D. 653 (M.D.N.C. 1995); *Dunn v. State Farm Fire & Casualty Co.*, 122 F.R.D. 507 (N.D. Miss. 1988).  The other line of case law creates a presumption that documents prepared prior to an insurer issuing a formal notice of intent to deny coverage are not covered by the work product doctrine, while documents prepared after such notice are covered by the work product doctrine. *See Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655 (S.D. Ind. 1991); *Front Royal Ins. Co. v. Gold Players, Inc.*, 187 F.R.D. 252, 257 (W.D. Va. 1999).  Though the facts of each case vary, both lines of case law tend to establish that the work product doctrine kicks in when "the probability of litigating the claim is substantial and imminent."  *Carver v. Allstate Ins. Co.*, 94 F.R.D. 131, 134 (S.D. Ga. 1982).

*Harper v. Auto-Owners Ins. Co.* and *Chambers v. Allstate Ins. Co.* are two cases that illustrate important distinctions in the application of the work product doctrine to arson cases.  In this case, the Magistrate Judge relied heavily on *Harper v. Auto-Owners Ins. Co.*, which states:

> [T]he Court concludes that Fed. R. Civ. P. 26(b)(3) requires that a document or thing produced or used by an insurer to evaluate an insured's claim in order to arrive at a claims decision in the ordinary and regular course of business is not work product regardless of the fact that it was produced after litigation was reasonably anticipated. It is presumed that a document or thing prepared before a final

decision was reached on an insured's claim, and which constitutes part of the factual inquiry into or evaluation of that claim, was prepared in the ordinary and routine course of the insurer's business of claim determination and is not work product.    Likewise, anticipation of litigation is presumed unreasonable under the Rule before a final decision is reached on the claim.    The converse, of course, is presumed for documents produced after claims denial. To overcome these presumptions, the insurer must demonstrate, by specific evidentiary proof of objective facts that a reasonable anticipation of litigation existed when the document was produced, and that the document was prepared and used solely to prepare for that litigation, and not to arrive at a (or buttress a tentative) claim decision.

*Harper*, 138 F.R.D. at 663-64.   Importantly, however, in *Harper* the insurer was only aware that

the fire was incendiary, but there were no facts indicating that the fire was set by the insured.

Therefore, the court determined that "[b]ecause the arsonist was unknown," and because there was

no information available to the insurer suggesting that the insured was the arsonist, "it was

unreasonable for [the insurer] to have acted in anticipation of litigation at that time."   *Harper*, 138

F.R.D. at 667.

In contrast, the court stated in *Chambers*,

Most Courts considering when Defendants reasonably anticipated litigation in cases of this nature have not focused upon whether or when the insurer formally denied coverage.   Rather, insurers are perceived as acting upon a "substantial and imminent" or "fairly foreseeable" threat of litigation when it becomes evident to them initially that the losses were caused by arson and the insured was involved in it.   In this case, though it was Defendant's general practice to conduct a cause and origin investigation in all cases of fire loss as Mr. Shaffer testified, it was almost immediately evident circumstantially that arson was the cause of the fire and Plaintiff may have been involved.   The fire occurred after Defendant sent its notice of cancellation and before the date Defendant set for the termination of coverage, and other indicia reasonably caused Defendant to be suspicious.   Defendant had confirmation that the fire was caused by arson through the initial report of UBA dated

7

> April 27, 1993.  It was "fairly foreseeable" therefore to Defendant
> right after the fire that it would deny coverage.

*Chambers*, 206 F.R.D. at 588.

In this case, the Magistrate Judge granted the Plaintiffs' motion to compel discovery, finding that the Defendant could not claim the work product doctrine for documents prepared prior to its formal determination to deny the Plaintiffs' claim for coverage on December 23, 2019.   The Magistrate Judge noted that the "particular facts presented in the case at bar suggest that while Defendant may have had some suspicion that suggested Harry Javins may have intentionally set the fire as of May 28, 2019, Defendant, along with the assistance of its counsel, continued to investigate the cause and origin of the fire well beyond May 28, 2019."   (Document 32 at 15-16.) The Magistrate Judge found that the "Defendant had not made an official determination to deny Plaintiffs' claims until on or about December 23, 2019—not until well after Defendant had engaged in months of investigation into Plaintiffs' claims."   (Document 32 at 21.)

The Magistrate Judge examined the materials provided *in camera* and noted that he "was unable to locate any notes in the claims file submitted for *in camera* review where there was any indication on May 28, 2019 that a determination was made that the fire was intentional or that Defendant concluded that its insured, Harry Javins, was the one who set it."   (Document 32 at 17.)   The Magistrate Judge determined that throughout the span of time between the fire and the formal determination to deny coverage, the Defendant indicated that the investigation was still ongoing.   The Magistrate Judge further determined that, in the materials submitted for *in camera* review, the Fire Origin & Cause Report prepared by EFI Global was prepared in the ordinary course of business.   The report was not prepared by retained counsel, and moreover, it concluded

8

merely that the fire seemed to have been caused by an incendiary event but did not indicate that it

was caused by Mr. Javins, and it did not unequivocally determine that the fire was started by arson.

Moreover, it was not until June 3, 2019, that the Origin and Cause expert, Greg Bailey, determined

that it appeared that the fire was intentionally set, and the report did not indicate Mr. Javins as a

possible suspect.   Therefore, the Magistrate Judge concluded that it was unreasonable for the

Defendant to claim work product protection backdated to May 28, 2019.   In support of his

determination, the Magistrate Judge stated,

> In any event, it is clear from the pertinent case law, and in
> consideration of the specific facts presented in the case at bar,
> Defendant had not made an official determination to deny Plaintiffs'
> claim until on or about December 23, 2019—not until well after
> Defendant had engaged in months of investigation into Plaintiffs'
> claims.   This is an important distinction in this case versus the
> *Chambers* case and its predecessors: in those cases, the insurers
> relied on strong circumstantial evidence that determined their
> insureds' claims were not covered because their insureds not only
> ***caused*** their losses, but also ***intentionally*** caused their losses.
> From the date of the loss, May 23, 2019, through the date of denial,
> December 23, 2019 (with the notable exception being the December
> 27, 2019 email from Mr. Parker to Mr. Brown . . .), the particular
> facts in this case demonstrate that Defendant had no reasonable
> anticipation of litigation from Plaintiffs because not only did
> Defendant not know that Harry Javins intentionally set the fire to his
> house, but also, Defendant was still investigating whether Harry
> Javins intentionally set the fire to establish a reason to deny his
> claim.   Indeed, outside of Defendant's own ***opinion***, there has been
> no evidence presented to the undersigned, *in camera* or otherwise,
> that implicates Harry Javins as an arsonist, or suspected of arson, or
> even that he intentionally set the fire."

(Document 32 at 20-21.)

However, the Defendant submitted documentation to this Court establishing that, on or

prior to May 28, 2019, the Defendant had information suggesting that Mr. Javins intentionally set

the fire.   On May 24, 2019, an employee of the Defendant noted that the Plaintiffs "came into the

office very upset last week after learning that we will not renew." (Document 35-1.) The

employee's notes further reveal that they spoke with John Adams, Captain of the Police

Department and the Fire Chief, who stated that "the fire started in the center part of the home" and

"the disconnect is in the off position to rule out electrical and the gas meter is locked out." (*Id.*)

On May 28, 2019, another employee of the Defendant made the following notes:

> Today at 10:40 AM called WV ASFM Justin England . . . . He has
> interviewed the insured who stated that he (the insured) was at the
> [premises] on the morning of the fire. The insured advised ASFM
> England he arrived at the risk at app 12:50 AM. He sat in his
> recliner and went through his mail. He was also in the basement
> looking for a jar of molasses. The insured left the risk at app 2 AM
> and the fire alarm time is app 5 AM.
>
> At app 1:30 AM a Madison patrol officer smelled smoke in the area
> of the risk but was unable to find anything. The officer was
> apparently in the area of the risk for some time attempting to locate
> the source of the smoke.
>
> AFSM England went on to share that when the FD arrived the house
> was secure and forced entry was made by the FD. The electrical
> main (disconnect) was also in the "off" position.

(Document 35-2.)

Therefore, by May 28, 2019, the Defendant knew the fire occurred several days before the

insurance policy was set to terminate and the Plaintiffs were upset about the non-renewal. The

Defendant knew that Mr. Javins was at the house during, or immediately prior to, the initiation of

the fire. The fire alarm went off at 5 a.m., and Mr. Javins was present at the house from 12 a.m.

to approximately 2 a.m. A police officer patrolling the area smelled smoke around 1:30 a.m.,

when Mr. Javins indicated that he was still on the premises. The electric and the gas were shut

off to the house, eliminating those as possible sources for the fire. Additionally, the house was

securely locked, ensuring that the fire was not caused by an intruder. Moreover, the fire started

10

in the center of the house in the basement, where Mr. Javins stated that he had been around the time the patrolling officer smelled smoke.

The circumstances presented by this case are strikingly similar to other cases in which courts determined that litigation was reasonably anticipated and, thus, documents prepared by the insurer were protected by the work product doctrine.  *See Chambers*, 206 F.R.D. 579 (S.D. W. Va. 2002); *Carver v. Allstate Ins. Co.*, 94 F.R.D. 131 (S.D. Ga. 1982); *Lett v. State Farm Fire & Casualty Company*, 115 F.R.D. 501 (N.D. Ga. 1987); *Ring v. Commercial Union Insurance Company*, 159 F.R.D. 653 (M.D.N.C. 1995); *Dunn v. State Farm Fire & Casualty Company*, 122 F.R.D. 507 (N.D. Miss. 1988). "[I]nsurers are perceived as acting upon a 'substantial and imminent' or 'fairly foreseeable' threat of litigation when it becomes evident to them initially that the losses were caused by arson and the insured was involved in it."  *Chambers*, 206 F.R.D. at 588.   Given the circumstantial evidence available to the Defendant as of May 28, 2019, it is fair to say that it was apprised of a substantial and reasonable threat of future litigation inasmuch as the facts indicated Mr. Javins was present at the premises during, or shortly before, the initiation of the fire, after the fire the structure was found to be locked and secured, other possible causes of the fire at the premises had been largely ruled out and Mr. Javins had been advised the policy would not be renewed.   Litigation was fairly foreseeable.   Therefore, the Court finds that the Defendant may claim protection from the work product doctrine for documents prepared in anticipation of litigation as of May 28, 2019.   The Plaintiffs have presented no evidence or argument of substantial need.   The objections to the Magistrate Judge's ruling regarding work product protection should be sustained.

11

B.       *Attorney-Client Privilege*

Following *in camera* review, the Magistrate Judge determined that communications with

Mr. Kesner and his law firm were split between materials protected under attorney-client privilege

because they sought legal advice, and materials that enjoyed no protections because they were

prepared in furtherance of Mr. Kesner and the Defendant's investigation into the fire loss claims.

The Defendant objects to this finding, arguing that all communications with retained counsel

should be protected under the attorney-client privilege.

The West Virginia Supreme Court has held that four circumstances must be present for

attorney-client privilege to attach:

> (1) Both parties must have contemplated that the attorney-client
> relationship did or would exist; (2) The advice must have been
> sought by the client from the attorney in his capacity as a legal
> adviser; (3) The communication between the attorney and the client
> must have been identified to be confidential; (4) There must be no
> evidence that the client intentionally waived the privilege.

*Chambers*, 206 F.R.D. at 589.   The West Virginia Supreme Court has held that attorney-client

privilege may apply "[w]here an attorney acts to investigate a claim and has direct contact with

third parties as a result of the investigation . . ."   *State ex rel. Montpelier U.S. Ins. Co. v. Bloom*,

757 S.E.2d 788, 794 (W. Va. 2014).   "It has been recognized 'that an insurance company's

retention of legal counsel to interpret the policy, investigate the details surrounding the damage,

and to determine whether the insurance company is bound for all or some of the damage, is a

classic example of a client seeking legal advice from an attorney.'"   *Id.* at 795 (quoting *Hartford

Fin. Servs. Grp., Inc. v. Lake Cnty. Park & Rec. Bd.*, 717 N.E.2d 1232, 1236 (Ind.App. 1999)).

Moreover, among those who may claim the attorney-client privilege are "an insurance company's

investigator who takes a statement from an insured to assist the insurance company's lawyer in

12

defending a possible claim against the insured." *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht*, 583 S.E.2d 80, 88 (W. Va. 2003).

Unlike the work product doctrine, the attorney-client privilege does not turn on whether litigation was reasonably anticipated, but instead turns on whether the communication involves legal advice. Therefore, such communications do not depend on whether they occurred prior to or after a decision to deny insurance coverage because attorney-client privilege can attach to communications concerning legal advice about *whether* to deny coverage. However, where an attorney is retained solely as an investigator, rather than as an attorney, no attorney-client privilege attaches and the communications must instead be run through the work product analysis to see whether the documents were prepared in anticipation of litigation and are, thus, protected. *State ex rel. U.S. Fidelity & Guar. Co. v. Canady*, 460 S.E.2d 677, 689 (W. Va. 1995).

Upon *in camera* review of the materials, the Court finds that the Defendant correctly claimed attorney-client privilege for the contested documents. The contested documents contain notes memorializing communications with counsel. Given the nature of the fire and the suspected arson, it is clear that both parties contemplated that the attorney-client relationship would or did exist. The documents make clear that such communications were designed to solicit legal advice about how to proceed with the pending claim. Although counsel did investigate the pending claim, it is evident that such investigation was intended to bolster counsel's role as legal advisor. Additionally, many of the other documents claimed to be covered by attorney-client privilege relate to communications regarding defense in the instant lawsuit and are, thus, also protected. Accordingly, the Defendant's objections to the Magistrate Judge's ruling regarding attorney-client privilege should likewise be sustained.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that

*Westfield Insurance Company's Objections to March 19, 2021 Order Granting Plaintiff's Motion*

*to Compel Discovery Responses* (Document 35) be **SUSTAINED**, as more fully set out herein.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to

any unrepresented party.

ENTER:      May 28, 2021

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

14